(4:11cv0730)

PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY L.  DICKERSON, | ) | |
| | ) | CASE NO. 4:11cv0730 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

*Pro se* Petitioner Timothy Lynn Dickerson filed the above-captioned Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2241.  Mr. Dickerson, who is incarcerated at the Federal

Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"), names the United States of America as

Respondent.  He seeks the Court's intervention regarding his unexpired parole term imposed by

the State of Kentucky.

## I. BACKGROUND

In May 1992, the Commonwealth of Kentucky sentenced Petitioner to two years

imprisonment followed by a consecutive term of  three years imprisonment.  The Kentucky

Parole Board granted Petitioner parole, possibly in 1997.[1]  He was arrested some time thereafter

and "sent to prison March 1998 in case # 97cr-000322."[2]  ECF No. 1 at 2.  Petitioner claims the

---

[1] Because Petitioner does not disclose his release date from prison, the Court reasons that his parole commenced five years after the Commonwealth imposed his  sentence.

[2] There is no record of any federal indictment against Petitioner under case number 97cr000322.  He was named as a defendant, however, in

(continued...)

(4:11cv0730)

sentence was appealed and he was released "to the prior parole that he previoul[y] was under."

ECF No. 1 at 3.

 While on parole from Kentucky, Petitioner was arrested and charged with committing a federal crime.  The Public Access to Court Electronic Records (PACER) reveals Petitioner was indicted in the United States District Court for the Western District of Kentucky on October 18, 2000.  *United States v. Dickerson*, 3:00-cr-00120 (W.D. Ky filed Oct.  18, 2000).  A six-count superceding indictment was filed on January 9, 2001 charging Petitioner with, *inter alia*, conspiracy to distribute a controlled substance in violation of 21 U.S.C. §846.  *Id.*  He pleaded guilty to counts 1-6 of the superseding indictment on January 16, 2001.  Following Petitioner's sentencing hearing on April 16, 2001, the Court entered its Judgment and Commitment ("J&C") on April 25, 2001.  The J&C reflects concurrent sentences of 120 months on counts 3 & 6, along with 240 months for counts 1, 2, 4, & 5.

 On June 21, 2001, the Kentucky Board of Parole lodged a parole violator warrant against Petitioner with the Federal Medical Center in Lexington, Kentucky ("FMC Lexington").  The prison advised the Parole Board that Petitioner was tentatively scheduled for release from federal prison on February 28, 2018.

 Four years after the detainer had been lodged, Petitioner sent a letter, dated November 27, 2005, to Angela H. Turton at the Kentucky Parole Board.  Petitioner sought guidance from Ms. Turton regarding why the Board placed a detainer on him "for an unserved eight (8) months,

---

 [2](...continued)
 *United States v. Dickerson*, 3:00-cr-00120 (W.D. Ky filed Oct.  18, 2000).

(4:11cv0730)

when the federal statutes and/or guidelines allows for this time to be ran [sic] concurrently."

ECF No. 1-1 (Letter from Dickerson to Turton, of 11/27/05).  Petitioner also attaches

photocopies of envelopes addressed to him from the Commonwealth of Kentucky/Department of

Corrections (date-stamped December 2, 2002), from the Commonwealth of Kentucky/Parole

Board (date-stamped September 14, 2004) and from the Kentucky Department of Corrections

(date-stamped December 2, 2005).  ECF No. 1-1.  He offers these envelopes as proof that he

attempted to exhaust his remedies and that he received a response.  The contents of these

envelopes, however, are not attached to the petition.  Instead, Petitioner concludes that the

"parole board has shown there [sic] unwillingness to even consider anything."  ECF No. 1 at 8.

## II.  Analysis

Petitioner states he was "only months away" from completing his Kentucky parole term

before he committed his federal offense.  He estimates that he completed 59 months of his parole

term of "61 [months] and 12 days."[3]  ECF No. 1 at 3.  During this time, he maintains he was

"well within the reach of the . . . Kentucky State Parole Board, and . . . should have had a parole

revocation hearing" with a three member quorum pursuant to Kentucky Revised Code

§439.320(5).  ECf No. 1 at 3.  He argues that the Board's failure to provide a final revocation

hearing violated his rights under the Due Process Clause of the Fourteenth Amendment.

Quoting *Morrissey v. Brewer*, 408 U.S. 471, (1972), Petitioner maintains that he was

entitled to a final revocation hearing within some reasonable period of time after he was taken

---

[3]The Court has construed Petitioner's declaration that "61 and 12 days [to] wipe out the
parole supervision" to mean his entire parole term.

(4:11cv0730)

into custody.  The due process protections to which Petitioner claims he is entitled under

*Morrissey* include the opportunity to call witnesses and a written statement of the

decisionmaker's reasons for denying parole.  He theorizes, based on *Morrissey*, that a prompt

hearing would allow him to defend himself while the information is fresh and sources are

available.  He reasons, "[s]uch an inquiry is in the nature of a *preliminary hearing* to determine

whether there is probable cause . . . to believe that the arrested parolee has committed acts which

would constitute a violation of parole conditions."  ECF No. 1 at 5 (emphasis added).  He cites

§439.440 of the Kentucky Revised Code to assert he was entitled to be heard within 30 days after

he was returned to prison on his violation.  Petitioner argues his Fourteenth Amendment right to

due process was violated because he was not provided an informal hearing "to support the

revocation."  ECF No. 1 at 5.

In a secondary argument, Petitioner seeks credit against his probation term based upon his

interpretation of Kentucky Revised Code § 439.352.  He believes the statute entitles him to

accrue time credit on his Commonwealth sentence while he is in federal prison.  Citing *Hall v.*

*Simpson*, 2008 U.S. Dist. Lexis 75271, 1-2 (E.D. Ky. Sept. 29, 2008), Petitioner claims that the

court's interpretation of § 439.352 turned on the question of whether the parolee was within

reach of the parole board.  Petitioner argues that  "he was within reach of the Kentucky Parole

Board because he was confined in the Commonwealth of Kentucky for a lengthy period of time

after his arrest and sentence of this federal sentence."  ECF No. 1 at 6.

From this reasoning, Petitioner asserts his parole was improperly revoked.  He purports to

quote "*Orr v.  Gunneth*, 546 F. Supp. 792 (Conn. 1983)" in support of the proposition that he is

4

(4:11cv0730)

entitled to credit for time he has served on his parole violation.[4]  To deny him this credit, he

claims, would be unconstitutional under KRC § 439.344 and "there should be a reducing [sic] in

the original sentence because parole is equivalent to incarceration for purposes of sentence

reduction."  *Id.*

Speaking on behalf of the Parole Board, Petitioner states that the Board has taken a stand

against his request to receive credit for time he already spent on parole.  He does not elaborate

upon what basis the Board allegedly used to reach its decision, but claims that  he only has "less

than six months and realistically, just two months" left on his parole term.  ECF No. 1 at 7.

Because the Board has allegedly violated his due process rights, the "remainder of the parole

time is really legally terminated."  ECF No. 1 at 7.  As such, he claims that the Court should

order the Board to rescind its detainer notice.  This would allow Petitioner to freely participate in

prison programs for which he is currently ineligible because of the detainer.

Finally, Petitioner acknowledges his responsibility to exhaust his claims before filing a

petition in federal court.  He believes that his letter to the Parole Board in 2005, and the

photocopied envelopes, provide sufficient evidence to demonstrate that he met this requirement.

## A.  Exhaustion

Petitioner asserts he was entitled to a hearing, pursuant to K.R.S. § 439.440, within 30

days after his arrest.  Any claim concerning the failure of the Kentucky Parole Board to hold a

revocation hearing pursuant to a parole violation warrant should initially be determined by the

---

[4]There is no federal case captioned *Orr v. Gunneth*.  Moreover, the citation to "546 F. Supp. 792" is non-existent.

(4:11cv0730)

State court.  *See Schofs v. Warden, FCI, Lexington*, 509 F.Supp.78, 82 (E.D.Ky.1981).  Kentucky

provides a remedy for such claims via mandamus actions.  *See* Ky.Rev.Stat. § 439.440; *Allen v.*

*Wingo*, 472 S.W.2d 688 (Ky.1971) (mandamus is the proper remedy for abuse of authority by a

parole board in connection with revocation of parole).  Petitioner has an available State court

remedy, and given the adequacy of that remedy in providing the relief requested, exhaustion

would not be futile.  *See e.g., McKart v. United States*, 395 U.S. 185, 200 (1969); *Goar v.*

*Civiletti*, 688 F.2d 27, 28-29 (6th Cir.1982).  Therefore, any claims regarding his entitlement to a

"timely" parole revocation hearing are dismissed for failure to exhaust his State remedies.[5]

### B.  28 U.S.C. § 2241; Parole Violator Detainer

Under 28 U.S.C. §2241, the writ will not be extended to a prisoner unless "he is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3).  The petition for a writ of habeas corpus must be directed against the entity with

custody or legal control over the petitioner.  *See* 28 U.S.C. § 2243 ("The writ, or order to show

cause shall be directed to the person having custody of the person detained ... [and t]he person to

whom the writ or order is directed shall make a return certifying the true cause of detention.");

*Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004) (stating that where "a habeas petitioner ...

challenges a form of 'custody' other than present physical confinement," the proper respondent is

"the entity or person who exercises legal control with respect to the challenged custody.").  Here,

the named Respondent, the United States (or the Warden at F.C.I. Elkton), has custody and legal

---

[5] Even if the Court were inclined to construe his envelopes as evidence that he exhausted his remedies, the return addresses are from the Parole Board and not from a Commonwealth court.

(4:11cv0730)

control over Petitioner at this time.

To the extent that the Court has any jurisdiction over this Petition, it is limited.  Petitioner

argues, in part, that the imposition of Kentucky's detainer and delay in his revocation hearing

deny him the opportunity to participate in certain prison programs.  These collateral

consequences of the detainer do not, however, rise to the level of a constitutional deprivation for

which habeas relief can be granted.  An inmate does not have a liberty interest in assignment to a

particular institution or to a particular security classification, so long as the conditions or degree

of the inmate's confinement falls within the sentence imposed upon him and does not otherwise

violate the U.S. Constitution.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v.

Fano*, 427 U.S. 215, 224-25 (1976); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v.

Daggett*, 429 U.S. 78, 88 n. 9 (1976) (noting that prison classification and eligibility for

rehabilitative programs in the federal prison system are matters delegated by Congress to the

"full discretion" of federal prison officials and thus implicate "no legitimate statutory or

constitutional entitlement sufficient to invoke due process").

**C.  Kentucky Revised Statute § 439.352; Recommitment of Parolee**

Petitioner claims that K.R.S. § 439.352 entitles him to receive credit on his parole term

while he serves his federal sentence.[6]  Petitioner's claim, however, is premature.  While

---

[6]The statute states, in full:

> Recommitment of a parolee to prison on a new sentence received for
> commission of a crime while on parole shall automatically terminate his
> parole status on any sentence on which he has not received a final discharge,
> or a restoration of civil rights, prior to the date of recommitment.  The

(continued...)

7

(4:11cv0730)

Petitioner is in the custody of the Court, he will technically remain "on parole" throughout his

federal imprisonment until he is returned to the Commonwealth of Kentucky.  *See*  Hall, No.

6:07-CV-424, 2008 WL 4516334, (E.D. Ky. Sept. 29, 2008).  The District Court of Kentucky

reasoned that Kentucky parolees serving new sentences outside of the Commonwealth remained

on parole until their return to Kentucky.  *Id.*  The *Hall* court relied on the Supreme Court of

Kentucky's analysis in *Kassulke v. Briscoe-Wade*, 105 S.W.3d 403 (Ky.2003), wherein:

> a Kentucky parolee (Briscoe-Wade) absconded to Missouri,
> committed a crime, and pled guilty. *See* id. at 405. After serving
> time in Missouri, Briscoe-Wade returned to Kentucky and the
> board revoked her parole. *See* id. at 406. The court held that
> Briscoe-Wade remained on parole until revocation by the board.
> Because state law prohibits credit for 'time spent on parole,' *see*
> KRS § 439.344, the court further explained that Briscoe-Wade
> would not have earned credit toward her Kentucky sentence during
> Missouri incarceration. *See* id. at 408 ("As Appellee's parole was
> not revoked until after she was returned to Kentucky, the time she
> spent incarcerated in Missouri under her Missouri sentence, but on
> parole, did not count towards her Kentucky sentence.").

*Hall,* 2008 WL 4516334, at *4 (emphasis added).  When determining whether Kentucky parolees

in federal custody may seek credit under K.R.S. §439.352, appellate courts within the

Commonwealth have expressly observed: "[B]efore a parolee can be given credit for time served

on a Kentucky sentence after his parole has been revoked, the parolee must be within the custody

---

[6](...continued)

> prisoner shall, at the time of the recommitment on the new sentence, begin
> to accrue additional time credit toward conditional release or expiration of
> sentence on the sentence on which he had previously been paroled unless he
> has been finally discharged from parole on the sentence or has been restored
> to civil rights prior to the date of the recommitment

K.R.S. § 439.352.

8

(4:11cv0730)

of Kentucky." *See O'Conner v. Schneider*, 117 S.W.3d 666, 669 (Ky.Ct.App.2003); *see also*

*Anglian v. Sowders*, 566 S.W.2d 789 (Ky.Ct.App.1978) (Kentucky parolee in custody in another

jurisdiction is, from Kentucky's perspective, a "fugitive from justice" under KRS 439.430(3)).[7]

Accordingly, the Commonwealth has made it abundantly clear that Petitioner is not entitled to

seek credit under K.R.S. §439.352 while he is outside the jurisdiction of Kentucky.

> While Petitioner argues that he was in the Commonwealth's physical custody well before
his federal sentence commenced, he no longer has that status. If Petitioner believes he is entitled
to challenge the Commonwealth's actions, he may pursue that issue once he is once again in the
physical custody of the Commonwealth of Kentucky.

### D. Due Process

> Petitioner contends the Kentucky Parole Board's failure to afford him a parole violator
hearing constitutes a *per se* violation of his procedural due process rights. To establish a
procedural due process violation, an individual must demonstrate that he has been deprived of a
constitutionally-protected property or liberty interest. *Daniels v. Williams*, 474 U.S. 327, 339
(1986). A constitutionally-protected interest may arise either from the Due Process Clause itself,
or from a statute, rule, or regulation. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A liberty

---

[7]The *Hall* court noted:

> *O'Conner* and *Anglian* are not state supreme court decisions and neither case
> discusses KRS § 439.352. However, *Kassulke* cited *Anglian* approvingly,
> where the decision referenced KRS § 439.352, suggesting Kentucky Supreme
> Court endorsement of the notion that an extra-jurisdictional commitment
> would not produce creditable parole time

*Hall*, 2008 WL 4516334, at*4, n. 5.

9

(4:11cv0730)

interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although

conditional, freedom such that the loss of liberty entailed by its revocation is a serious

deprivation requiring that the prisoner be accorded due process. *Gagnon v. Scarpelli*, 411 U.S.

778 (1973).  As Petitioner appropriately argues, revocation of parole is one of those liberty

interests that fall into this category.  *See Morrissey v. Brewer*, 408 U.S. 471(1972).  However, the

loss of liberty as a parole violator does not occur until the parolee is taken into custody under the

warrant. *Moody v. Daggett*, 429 U.S. 78, 87(1976).  As *Moody* explicitly states:

> Petitioner's present confinement and consequent liberty loss derive
> not in any sense from the outstanding parole violator warrant, but
> from his two 1971 homicide convictions. Issuance of the warrant
> and notice of that fact to the institution of confinement did no more
> than express the Board's intent to defer consideration of parole
> revocation to a later time. Though the gravity of petitioner's
> subsequent crimes places him under a cloud, issuance of the
> warrant was not a determination that petitioner's parole under his
> 1962 rape conviction will be revoked; the time at which the
> Commission must make that decision has not yet arrived. With
> only a prospect of future incarceration which is far from certain, we
> cannot say that the parole violator warrant has any present or
> inevitable effect upon the liberty interests which Morrissey sought
> to protect. Indeed, in holding that "(t)he revocation hearing must be
> tendered within a reasonable time after the parolee is taken into
> custody," we established execution of the warrant and custody
> under that warrant as the operative event triggering any loss of
> liberty attendant upon parole revocation.

*Moody*, 429 U.S. at 86-87 (internal citations omitted).  As provided by Kentucky law, if a parolee

is arrested, K.R.S. § 533.050 sets forth the following procedures to be followed before the

parolee is recommitted as a convicted parole violator:

> 533.050 Arrest of defendant on probation or conditional discharge; notice and
> hearing; exception under KRS 439.3108

10

(4:11cv0730)

(1) At any time before the discharge of the defendant or the termination of the sentence of probation or conditional discharge:

(a) The court may summon the defendant to appear before it or may issue a warrant for his arrest upon a finding of probable cause to believe that he has failed to comply with a condition of the sentence; or

*     *     *

(2) Except as provided in KRS 439.3108, the court may not revoke or modify the conditions of a sentence of probation or conditional discharge except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification

K.R.S. §533.050.  The language in the statute does not dictate when a parole violator is entitled to a revocation hearing.  Thus, in accordance with the Supreme Court's decision in *Moody*, Petitioner cannot assert a loss of liberty occurred until he is taken into custody under the parole violator warrant.  *See Moody*, 429 U.S. at 87.

Based upon the foregoing precedent, Petitioner has not established an entitlement to a revocation hearing until after he returns to Kentucky custody, which will not occur before Petitioner completes his sentence in federal prison.  The arrest warrant in this case has not yet been executed, and only serves as a detainer to ensure his extradition to Kentucky and into State custody at the conclusion of his federal sentence.

### III.  Conclusion

The petition for writ of habeas corpus is dismissed pursuant to 28 U.S.C. § 2243.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be

11

(4:11cv0730)

taken in good faith.

       IT IS SO ORDERED.


  August 31, 2011                         */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                             United States District Judge